Filed 4/21/14  P. v. Williams CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GLENN A. WILLIAMS,<br><br>    Defendant and Appellant. | 2d Crim. No. B248053<br>(Super. Ct. No. BA404512-01)<br>(Los Angeles County) |

Glenn A. Williams appeals a judgment following conviction by jury of second degree robbery and assault with a firearm.  (Pen. Code, §§ 211, 245, subd. (a)(2).)[1]  The jury found true an allegation that Williams personally used a firearm.  (§ 12022.53, subd. (b).)  It acquitted him of robbery of another victim.  The trial court sentenced Williams to 15 years in state prison.

Williams contends that the prosecutor committed prejudicial misconduct by quoting a juror's voir dire response.  In the absence of any prejudice, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Evangelina Rivera testified that as she got into her car at 5:40 a.m., a man pulled her car door open, held a gun to her temple, and demanded money.  She gave him a bag that held approximately $300 in cash, her debit card, credit card, Target card,

---

[1] All statutory references are to the Penal Code unless otherwise stated.

identification card, and health insurance card. She refused to give him her car keys. The man hit her seven times on the head with the gun and then ran to a waiting car.

Part of the man's face was covered by a hood and a handkerchief during the robbery. Rivera remembered his eyes, his ears, his short hair, his size, and his hooded jacket. She did not notice a facial tattoo.

Rivera identified Williams in a photo line-up in which each man had a black rectangle covering the position of Williams's facial tattoo. She also identified Williams in court. She identified a gun that Williams had when he was arrested as looking like the gun used in the robbery.

Rivera's cards were found in the street about two hours after she was robbed. A fingerprint on the back of her Target card matched Williams's.

During voir dire, defense counsel questioned prospective jurors about Williams's appearance, including his tattoos. Some jurors said they had noticed Williams's tattoos, some said they had tattoos themselves and had no negative opinions about them, and one juror said tattoos made him (or her) think of a gang. The trial court admonished the jurors not to judge anyone by their tattoos and reminded them that many basketball players have tattoos. When counsel asked if jurors had "problems" with Williams's tattoos, Juror No. 8 responded, "I didn't see any tattoos. I'm sorry. I wasn't looking for that specifically . . . and I was in back, so I don't know if--I can't see him from here either, so--" Juror No. 9 said, "I haven't noticed any on that particular person."

In closing argument, the prosecutor said, "[Defense counsel is] going to tell you it can't be his client because the women didn't see any . . . tattoos on his face.[2] But I'll point out this, ladies and gentlemen, the juror seated in seat No. [8] said herself in the course of the voir dire process when both counsel and I had an opportunity to talk with you that she couldn't see the tattoos on the defendant's face when she has been in the same courtroom, under much better lighting, and certainly under different circumstances."

_____

[2]Another woman testified that she was robbed about 30 minutes before Rivera in the same general area. The jury acquitted Williams of that charge. She did not see any tattoos and did not identify Williams in a photo line-up.

2

Defense counsel objected.  The trial court sustained the objection, struck the statement, and admonished the jurors:  "The answers you gave during jury selection are not part of the evidence of the trial, so you cannot consider that.  All right.  So just ignore those comments."

The prosecutor continued, "To expect two women who were just robbed at gunpoint in the early hours of the morning while it was still dark out to notice small facial tattoos written in black on this defendant's face is not quite as significant as the defense would like you to believe."

DISCUSSION

The prosecutor should not have quoted an individual juror.  But we conclude there is no reasonable possibility that the comment affected the outcome.

"[C]ounsel should not quote individual jurors in their argument to the entire jury."  (*People v. Freeman* (1994) 8 Cal.4th 450, 517.)  But "'it does not follow that such conduct is necessarily prejudicial in any given case.'"  (*Id.* at p. 518.)  In *Freeman*, the prosecutor improperly quoted a short speech that a juror gave during voir dire concerning the need for the death penalty.  (*Id.* at p. 517.)  But the court found there was "no reasonable possibility the complained of comments affected the penalty determination" because the quote "contained nothing improper" and did not "suggest[] that the juror, or any juror, should not engage in the required individualized weighing process."  (*Id.* at p. 518.)

Identity was an important issue in this case, but the prosecutor's comments left the jury free to weigh the evidence and to deliberate with open minds about that question.  Use of the juror's statement was not prejudicial.  In *People v. Riggs* (2008) 44 Cal.4th 248, 326-327, a prosecutor used a chart in closing argument that contained copies of 12 handwritten responses from juror questionnaires in which they described the purpose behind the death penalty.  Use of the chart was improper, but not prejudicial.  The chart improperly implied "preexisting unanimity" as to the efficacy of the death penalty, and "use of the jurors' own answers in their own handwriting possibly implied that if those jurors did not vote for the death penalty in defendant's case, they would be acting inconsistently with what they had written—under penalty of perjury—in their questionnaires."  (*Id.* at p. 326.)  But

3

the statements were not particularly inflammatory, the prosecutor reminded the jurors they should not begin deliberations with preconceived notions, and the court instructed the jury to keep an open mind during deliberations. "That several of the jurors were presented with their own handwritten answers in conjunction with this otherwise permissible argument was not likely to have diminished any of the jurors' sense of responsibility, displaced the court's instructions regarding the jurors' duty to enter deliberations with open minds, or otherwise influenced the verdict." (*Id.* at p. 327.)

Here too the prosecutor and the trial court reminded the jurors to evaluate the case based on the evidence and to keep an open mind during deliberations. Further, the court struck the prosecutor's comment about Juror No. 8 and admonished the jurors to disregard it. There were no such admonishments in *Freeman* or *Riggs*.

Williams argues that the trial court should have more particularly admonished Juror No. 8 to "set aside her prior statement, *even though it was made under oath*." Williams cites no authority for such an instruction and we see no need for it, even if it had been requested. Juror No. 8 did not swear under oath that Williams's tattoos could not be seen by his victim or by anyone else, as Williams implies. Juror No. 8 said she could not see Williams at all: "I can't see him from here either, so--" After a review of the entire record, we are satisfied that there is no reasonable possibility that the prosecutor's comment affected the outcome of this case.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:


YEGAN, J.


PERREN, J.

4

Clifford L. Klein, Judge

Superior Court County of Los Angeles

_____


Maria Morrison, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Pamela C. Hamanaka, Deputy Attorney General, for Plaintiff and Respondent.